\* In the Matter of B. F. MERRILL, Petitioner.

\* In the Matter of CENTRAL VT. R. R. CO., Petitioner.

[In Chancery.]

*Railroad.   Receivers.   Report of Referee Conclusive unless mistake.   Negligence.*

1. When one railroad company has a right by contract to run its trains over the track of another railroad company, the latter company is liable for injuries caused solely by the negligence of its own switchman in not properly attending to his duty, to an engineer of the former company while operating his engine on said track; and, also, to the other company for damage to its property.
2. The rule is approved that when a party's negligence is imminently dangerous to life he is liable for all injuries sustained by any one, without fault, which were the probable consequence of such party's negligence.
3. A special master's report of facts is conclusive when the reference was voluntary, unless for evident mistake on the part of the master, or evident corruption; and it must appear affirmatively.
4. The defendant railroad company was in possession and management of receivers appointed by the Court of Chancery. The petitions to recover for the injuries were properly brought to that court.

Both cases were heard on the report of a special master at the March Term, 1881, Washington County; Ross, Chancellor in one case, and Taft, Chancellor, in the other. The report of the master was sustained, and the receivers ordered to pay the amount found by him.

\* Both cases heard at the adjourned General Term, May, 1882.

Merrill *v.* Railroad Co.

### ABSTRACT OF PETITIONS.

The petition in each case sets forth substantially the same facts, to wit, that there was a contract between the Central Vermont Railroad Company and the receivers of the Montpelier & Wells River Railroad Company, by which the Central Vermont Railroad Company ran its trains over that portion of the track of the M. & W. R. R. R. Co., lying between the Central Vermont depot in Montpelier and Barre Junction, so called, a distance of about two miles ; that the C. V. R. R. Co. had been in the daily use of said track for a long time previous to the 26th day of September, 1876 ; and that said contract was in full force on said day ; that at Barre Junction there was a switch under the exclusive control of the receivers for the purpose of letting the C. V. R. R. train off and on to the M. & W. R. R. R. track from the M. & White R. R. R. track ; that solely by the negligence of the switchman at Barre Junction on the 26th day of September, A. D. 1876, the train of the C. V. R. R. Co. was let on to the track of the M. & W. R. R. R. Co., at Barre Junction, at an improper time, and said train was signaled that the track was clear, and that it had the right to proceed in the usual way to Montpelier over that portion of the track of the M. & W. R. R. R. ; that it did proceed and before reaching Montpelier it collided with a train on the M. & W. R. R. R. ; that the petitioner, B. F. Merrill, was engineer on the Central Vermont train and lost a leg in consequence of the collision ; and that the engine and car of the C. V. R. R. Co. was damaged.

The petitioner, B. F. Merrill, asked the court to order the receivers to pay him the damages sustained by said collision ; and the C. V. R. R. Co. asked to have the receivers pay them the damages to their train occasioned by said collision.

The receivers alleged in their answer that the C. V. R. R. was, on the 26th day of September, 1876, engaged in running trains over that portion of the M. & W. R. R. R. track between Montpelier and Barre Junction by their license, but subject to the rules and regulations of the M. & W. R. R. R., upon terms mutually agreed upon between them ; that the petitioner, B. F. Merrill, and the others in charge of the train which collided with the train on the M. & W. R. R. R. Co. were not running their train according to the rules and regulations of the M. & W. R. R. R. Co. in force at that time, and that the collision was caused in whole or in part by their fault and negligence. The receivers also objected to the reference to a master until the facts were established by the court upon which their liability was founded.

The court referred both petitions to the same master, and the hearing on both petitions was had at the same time ; the master

was ordered to return all the testimony to the court. He found, among other things, as follows :   .   .   .

And the said Central Vermont Company in operating said Barre road as aforesaid was, under contract with the said M. & W. R. R. R. Co., and the said receivers, making use of and running its trains over that section of the M. & W. R. R. R. between said Coffee House, or a point close by known as Barre Junction, and Montpelier village, being about two miles, upon terms agreed upon between said C. V. R. R. Co., and the said receivers, and said M. & W. R. R. R. Co.  .  .     That at said Barre Junction there was a switch, designed to let the trains running on said Barre road on to and off from the M. & W. R. R. R. section, so used by said Cen. Vt. Co., and also a signal or target was placed at said switch, both of which were erected and owned by and were at all times under the exclusive control of the said M. & W. R. R. R. Co. and said receivers to tend and keep in repair ; and the master finds that under the above named contract it was the duty of said receivers and said M. & W. R. R. R. Co. and those operating' said road to furnish at all times, at their sole expense, a switchman to tend said switch and signal and have the same in proper position at all times, and to show accurately, according to the rules regarding said switch and signal, when it was proper for said Barre trains to proceed upon or off from said section of said M. & W. R. R. R.

The signal or target placed at said Barre Junction, for day signal, consisted of a post set in the ground with an arm extending from near the top of the post which was so arranged as to be raised to a perpendicular position or let down to a horizontal position as the case required ; and this signal was so placed that it could be seen by the train men of both roads from either direction at a considerable distance before reaching said Barre Junction, and in season to enable the engineers to control their trains according to the signal. And the signal for day on the said 26th day of September, and which was understood by the conductors, engineers and train men of both roads was, that when the arm was horizontal in position it indicated to the Barre road engineer and conductor that no trains were in the way on said section of the M. & W. R. R. R., and that said switch was properly placed for the Barre train to proceed on to the said section of said M. & W. R. R. If the arm was down at perpendicular it indicated that the Barre train had not clear road over this section and must wait at said Junction.  .  .  .  .

That at this time and before and after, the tender of said switch and signal was a Mr. Kempton, in the employ for that purpose of

said M. & W. R. R. R. Co. and said receivers, living near by said switch, but from time to time during the summer and spring previous to said 25th September the said switch and signal had been tended by a young lad then living with said Kempton; and the master finds from the evidence that the fact that said lad was tending said switch and signal had long been observed by Mr. Stowell (who was then acting superintendent of said M. & W. R. R. R. during all the time in question, and had in that capacity the hiring of all the employes on said road) without objection, and with his acquiescence. That said Stowell was informed long before of the desire of Mr. Kempton to place said boy, Goodno, in charge of said switch and signal, but did not directly consent nor object, but Mr. Kempton supposed he had liberty and leave from Mr. Stowell to employ said boy in that service.

That on the occasion in question said boy, Goodno, was at said switch when said Barre train approached, and was in sole charge of said switch and signals.

In the course of trains on the M. & W. R. R. R., there was a mixed train destined for Wells River, to start by the time table of that road from its depot at Montpelier at 5:7 P. M., but on a difference of chronometer time of the two roads of 4 minutes on which their respective time tables were calculated, ample time was given said M. & W. R. train to pass Barre Junction some minutes before the Barre train on its time could arrive at Barre Junction.

On the occasion in question it was observed by the engineer, fireman and conductor of said Barre train a considerable distance before reaching said junction that the arm of said signal was in the right position and that said switch was also set right for said Barre train to proceed on the said M. & W. R. R. R., and so the engineer of said Barre train did not stop but proceeded on his way over said switch. . . . .

The master finds that the petitioner and his train men did all that it was possible to do, and used all proper diligence to stop said train and prevent said collision; that the petitioner was in the exercise of due and proper care and prudence in running his said engine; that he and his said train men were guilty of no negligence or imprudence either in running said train, in passing said switch, or in their attempt to stop said train to prevent said collision, and that said collision was in no way contributed to by any negligence or want of care or diligence of the petitioner or any of the men in charge of said train. . . . . .

On the whole evidence submitted the master finds that the M. & W. R. R. R. Co. and said receivers and those having charge of the

same were guilty of negligence, want of care and diligence and neglect of duty in the management of their said road and said switch and signal, and that the said accident and injury to said petitioners were wholly due to and occasioned by their said negligence and want of care and diligence and neglect of duty as charged in said petition.

The master finds that the said petitioner has thereby suffered damage to the amount of five thousand dollars, and he therefore finds and awards that the said petitioner recover of the said defendants the sum of five thousand dollars and his costs.

The defendants made many requests to the master ; also, a motion to recommit the report ; also, a motion to set it aside ; but these are immaterial in view of the opinion of the court. The other facts are sufficiently stated in the opinion.

*S. C. Shurtleff*, for the defendants.

It is conceded that the court should find the facts upon which the right of recovery is based ; but the petitioners claim that the court can call to its aid a master, whose report is as final as the verdict of a jury, or the report of an auditor. This the defendants do not concede. It was not until Statute 21 and 22, Vic. C. 27, that a Court of Chancery in England could assess damages ; their former practice as well as ours, was to send it to a jury, (33d Vt. 538) or for the court to try it. An accounting is properly sent to a master, but other facts are either to be tried by the court or sent to a jury. If sent to a master, the testimony must be reported, and the whole is subject to the revision of the court. *Herrick* v. *Belnap's Est. & Vt. C. R. R. Co.*, 27 Vt. 673. Although this has been changed by statute, (G. S. c. 29, s. 11,) so far as taking *accounts* are concerned, the statute does not apply to the question of damages. The conductor and engineer of the Barre train did not stop before crossing on to tbe M. & W. R. R. R. track, and whistle, as required by the statute. See Session Laws of 1872, No. 33, p. 73. It may be claimed that the law was not meant to apply to a case like the present, but we fail to see why the danger is not as great, or even greater, than when one road crosses another at right angles. The petitioners found their claim on the case of *Sawyer* v. *R. & B. R. R. Co.*, 27 Vt. 370, and cases there cited. The language used by the court in this

case is open to criticism, and is in direct conflict with the case of *Murch* v. *Concord Railroad*, 9 Foster, 29 N. H., and the reasoning therein.    We submit that the foregoing is not law.    Railroads lease their roads to other corporations to run, and to hold that the lessor, without any contract for that purpose, is legally bound to keep their track in repair, for the other one is absurd.    The fact that the contract usually provides for the repairs does not help the question—the lessor is not bound to repair unless he agrees to.    There is no pretence that the receivers agreed to keep the road in repair, or assume any risks of accident; the case simply shows that they gave a license, on certain terms, for the Barre train to run over the road ; no claim that they assumed any risk, or were paid for assuming any risks ; and we say as between these two roads, each road must bear its own loss, in the absence of any agreement upon this subject.    The learned counsel for the plaintiff cite the following cases to support their doctrine : *Nelson* v. *Vt. & Ca. R. R. Co.*, 26 Vt. 717 ; *Mayor &c. of Lyme Regis* v. *Henly*, 1 Bing. N. C. 222 ; 27 E. C. L., 614 ; *Phil. & Reading R. Co.* v. *Derby*, 14 How. 468 ; *Northern Railway Co.* v. *Harrison*, 26 Eng. L. & E.q 444 ; *Thomas* v. *Winchester*, 2 Seld. 398 ; *Collet* v. *Loud & N. W. R. R. Co.*, 6 Eng. L. & E. 305 ; *Longmead & Wife* v. *Holleday*, 6 Eng. L. & Eq. 462 ; *Cumb. Valley R. R. Co.* v. *Hughes*, 11 Penn. 141.    A critical examination of these cases shows in every one of them that the action was well founded as for the neglect of the defendants for the disregard of some public statute, or from privity of contract, as that of a common carrier.

*B. F. Fifield*, for petitioners.

The report of a master will not be set aside except for wilful misconduct or gross mistake.    43 Vt. 460 ; 50 Vt. 52 ; 31 Vt. 186.    On the facts reported the petitioners are clearly entitled to recover.    27 Vt. 370.    The report is fully sustained by the evidence.    The proceeding by petition was the appropriate remedy. *Peck* v. *Crane*, 25 Vt. 146 ; 46 Vt. 792 ; *Wiswell* v. *Sampson*, 14 How. 52.

The master finds his powers in the order of reference, and

should report facts and not evidence, unless required by the or-
der.  15 Vt. 196–7 ; 2 Daniell Ch. P. p. 1298–9 to 1300 and
note ; R. L. s. 701.

The opinion of the court was delivered by
VEAZEY, J.   The Montpelier & Wells River Railroad being in
the possession and management of receivers appointed in a suit
pending in the Court of Chancery, these petitions were brought in
that cause ; and the subject-matter of them became proper sub-
jects of adjudication in that court and cause.  Answers were
filed, and that court referred both petitions to the same master,
and the hearing was had on both petitions at the same time.  The
order of reference in the Merrill petition directed the special mas-
ter " to find and report to this court in accordance with the
prayer of said petition."   The order in the Central Vermont
petition was to the same effect, and also to return all the testi-
mony to the court.   One report was filed in both causes, also ex-
ceptions thereto by the receivers ; and upon hearing by the chan-
cellor the exceptions were overruled, and the receivers ordered
to pay the petitioners respectively the amount reported, from
which decrees an appeal was taken to this court.

It is first claimed in behalf of the receivers that the special
master's report of the facts is not conclusive thereof; that not-
withstanding the report, the testimony taken before him must also
be reported, and the whole of it is subject to revision by the Court
of Chancery, and by this court on the appeal.

It is further claimed that as the subject-matter of reference in-
volved an assessment of damages, it could only be tried by jury
or by the court; that only matter of accounting could properly be
sent to a master.   The case was referred before the law of 1878,
providing for trial of facts by special masters in any case in chan-
cery ; and we understand it was a voluntary reference, and that
no appeal has ever been taken to the order of reference or objec-
tion made to it.   It is too late now to raise any question upon
this order, or in respect to the method of trial adopted.

But the first point is the one now mainly pressed.   If the proposi-
tion here insisted upon is correct as a general proposition appli-

cable to all cases of reference, it is plain that nothing would ordinarily be gained by a reference. *Mott* v. *Harrington*, 15 Vt. 197. The reference in this case being regular, the rule as to the effect of the report is the same as it would be in a reference for taking an account. The general rule is that the master's finding of the facts is conclusive. It was so stated in *Merriam* v. *Barton*, 14 Vt. 501, unless the report for *good cause* be set aside ; without stating what would be good cause. The same was held in *McDaniels* v. *Harbour*, 43 Vt. 460, unless for evident mistake on the part of the master, or evident corruption. And in *Vt. & Can. R. R. Co.* v. *Vt. Cen. R. R. Co.*, 34 Vt. 65, unless the result is clearly shown to be wrong. And in *Rowan* v. *State Bank*, 45 Vt. 160, unless it appears affirmatively that the master found facts without evidence, or against evidence. In *Howard* v. *Scott*, 50 Vt. 48, Ross, J., speaking for the court, stated the rule as follows : " The finding of a master in matters referred to him in regard to the facts established by the testimony, is as conclusive upon the parties as the verdict of a jury in a civil cause, and will be reviewed or set aside only for the same reasons that a verdict would be. Where there is evidence tending to establish the facts found, neither the Court of Chancery, nor the Supreme Court on appeal, will review the findings in regard to the weight to be given to the testimony. The party attacking the master's report in this particular must satisfy the court that the master has acted corruptly or has been led astray by having entertained a mistaken view of the law applicable to the testimony." To the same effect see Daniell's Ch. vol. 2, p. 1300, n. 1, and cases there cited. (3d Am. ed.) There are many things that affect the weight and credibility of a witness's testimony, besides his words as they appear on paper.

Under the well-established practice here and elsewhere, this report is conclusive as to the facts in this case. There is no charge of corruption. A careful reading of the testimony shows no fact was found without evidence or against evidence. Under the general rule, the weight of the evidence was for the master to determine. There is nothing about this case to make it especially exceptional. The report covers the ground of the defendants' re-

quests and the motion to recommit, so far as was material and necessary in order for the defendants to have the full benefit of the law applicable to the case. We think there was no error in the decretal order overruling the exceptions and objections to the report; and that in its facts the case must stand upon the report.

It is further claimed that upon the report the petitioners are not entitled to recover. By contract between the Central Vermont R. R. Co. and the Montpelier & Wells River R. R. Co. the former acquired the right to use two miles of the track of the latter for the running of its trains, paying therefor a stipulated price. The switch which guided the Central Vermont trains on to this track was to be under the control of the Montpelier & Wells River Company, and to be operated by the switchman of that company. This constituted the entire arrangement, so far as expressed between the parties. An out going Montpelier & Wells River train from Montpelier was due to pass the point of this switch a few minutes before an incoming Central Vermont train was due at that point. As the latter train approached this point, the switchman informed the conductor that the outgoing train had passed. This was a mistake, and the consequence was a collision in which the petitioner Merrill, the engineer of the Central Vermont train, was injured and the train wrecked. The master finds that the accident and injury was due solely to the negligence of the defendants; and that said engineer and all his train men were without fault, but were in the exercise of due care and prudence.

The defendants insist that as the contract is silent as to who should take the risk in case of accident or be responsible for the negligence of the switchman, the petitioners can stand on no contract obligation. And they insist further that none of the duties expressly created or imposed by their charter or the general laws of the State were violated, therefore the petitioners were not injured by the non-observance of any duty imposed by law. The precise question here raised having been considered and decided in this State adversely to the defendants' claim in the case of Sawyer v. R. & B. R. R. Co., 27 Vt. 370, there is no occasion for re-examination of the subject unless that case is to be overruled; and the defendant's argument in substance is that that case

was decided wrong and should be overruled. The defendants do not deny the general proposition that the railroad company is responsible to a party for the breach of a public duty causing him special damage; and a privity of contract between him and the company is not necessary to entitle him to an action for the injury. Pierce on Railroads, page 274, after stating this proposition, says: " Its obligation to keep its railroad in a safe and proper condition for use is imposed not only for the benefit of its servants and passengers, but as a public duty independent of contract, and co-extensive with the lawful use of the road. Thus, where one company by agreement or otherwise has a right to run its trains over the road of another company, the servants of the former company may maintain an action against the company owning the road for an injury occasioned by the improper and negligent management of the switch, which it was the duty of the latter company to keep in the proper place," and he cites *Sawyer* v. *Rut. & B. R. R. Co.* and other cases. This language covers the precise question in this case. Another authority, not cited by Pierce, is the case of *Smith* v. *The N. Y. & H. R. Co.*, 19 N. Y. 127, a case identical in facts, in substance, and where the Court of Appeals adopted the same rule and arrived at the same conclusion as was adopted in *Sawyer* v. *R. & B. R. R. Co.* It would seem that the Vermont case, though previous to the New York case, was not brought to the attention of the New York court, as it is not cited in that case. It is probable, therefore, that these two courts arrived at the same result independently of each other. Two opinions were delivered in the New York case, one by GRO-VER, J., and one by SELDEN, J., both to the same effect. In that case one point was made which is not urged here ; that the case came within the rule that a servant cannot recover for an injury caused by the negligence of a fellow servant employed by the same master in the same general business. The answer made to that by both judges was that the injured person and switchman were not employed by the same master. Upon the point here pressed, the court held that the rule adopted in *Thomas* v. *Winchester*, 2 Seld. 397, applied. There it was held that a dealer in drugs, vending poison labeled as harmless medicine, was liable

to a party who purchased from the innocent vendee, for an injury occasioned by its use. The principle was that a party is liable for all the injuries sustained by any one without fault, which were the probable consequences of his negligence, when such negligence was imminently dangerous to life. The court in the New York case said: " Such liability tends to promote caution in these transactions of such vast importance to the public. A contrary rule will induce carelessness and negligence. *Langmaid* v. *Holliday*, 6 L. & E. 562. We see no occasion to disapprove of the application which the New York and Vermont courts thus early made of the principle of law above stated, and feel no hesitation in making the same application in this case. · Indeed, to deny it, would be to overrule a well-considered case of our own court, which has stood for more than twenty-five years, not since directly questioned anywhere so far as shown, but sustained by high authority, and which seems to have been approved by the best elementary writers. We think this is a case apt for the application of the rule *stare decisis*.

The defendant's counsel have discussed the question of interest, but the petitioners make no claim for interest prior to the decree of the chancellor.

The decree of the Court of Chancery is affirmed, and the cause remanded.