## CHARLES H. MERRIAM vs. LEVI GOSS & others.

Worcester. March 2. — 25, 1885. COLBURN, J., absent.

On a bill in equity to redeem land from a mortgage, an interlocutory decree was entered that the plaintiff be allowed to redeem; that the defendant be allowed for the improvements made on the premises; and that the case be sent to a master to report the amount due on the mortgage, and the value of improvements placed on the land, after deducting the rents and profits. *Held,* that the plaintiff was not precluded at the hearing before the master from showing that no improvements had been made on the land.

The mere fact that a mortgagor knows that a person in possession of mortgaged land, and who contemplates buying the mortgage, is putting buildings on the land, and makes no objection thereto, does not prevent him, on a bill to redeem the land, from contesting the reasonableness of the improvements.

After the parties to a mortgage had negotiated for a release of the equity of redemption, the mortgagee moved a dwelling-house upon the land. Execution of the release was deferred by the mortgagor, and was never made. The house was destroyed by fire after a decree was entered on a bill in equity that the mortgagor was entitled to redeem, but before the account was taken. *Held,* that the defendant was not to be allowed for the improvement.

On a bill in equity against two persons to redeem a parcel of land from a mortgage, if one of them alone has received rents and profits more than sufficient to pay the mortgage debt, he alone should be ordered to pay such surplus, and costs.

BILL IN EQUITY, filed March 25, 1879, by the assignee of a mortgage executed in 1851, and foreclosed in 1858, against Levi Goss, Samuel Putnam, Joseph Cozzens, Alfred L. Burditt, and John H. Lockey, to redeem a parcel of land in Leominster from a mortgage made in 1845 by one Lamb to one Hapgood, to secure payment of $600 and interest. Upon a hearing had in this court in 1880, it was decreed that the plaintiff be allowed to redeem, " that the defendants be allowed for the improvements made on the premises," and that the case be sent to a master to report " the amount due on said mortgage and the value of the improvements placed upon the premises, after deducting from said amount the rents and profits which have been received, or which might have been received, by the defendants, or any of them, . . . . and, if said rents and profits more than pay the said mortgage and for said improvements, to report that excess to the court." The report of the master showed the following facts :

The interest on the mortgage for $600 was paid to July, 1861. In 1862, while Hapgood still held the mortgage, the buildings on the land were destroyed by fire, and the land was not worth the amount due on the mortgage. " The plaintiff then assured the defendant Lockey that he should not pay any more interest on said mortgage, as he did not consider the estate worth the amount then due on the mortgage; and the plaintiff advised Lockey to purchase said mortgage, and assured him that he would release his equity of redemption to him, when he, the plaintiff, got his title back from a third person to whom he had conveyed it as collateral security, at a fair price in ordinary times, but not at the then depressed market value of real estate."

In the fall of 1862, Lockey, before he had taken from Hapgood an assignment of said mortgage, or obtained a release of the plaintiff's equity, took possession of the lot, moved a dwelling-house thereon, and enlarged, repaired, and fitted up the same for a tenement-house. The plaintiff paid the taxes of 1862; Lockey paid the taxes of 1863 and interest on the mortgage, and rented the house until January 8, 1864, when the mortgage was assigned to him. During this time Lockey intended and expected to purchase the mortgage and the plaintiff's equity, and the plaintiff knew that Lockey was in possession of the lot and making these improvements, and made no objection thereto, supposing that Lockey had bought the mortgage and would buy his equity of redemption. The plaintiff in 1871 obtained his title back from the person who had held it as collateral security, and when Lockey requested a release of the equity from the plaintiff, he did not give it, but said he would see about it.

In 1869 a dry-house, sheds, and a shop were built upon the rear part of this lot by Lockey's tenant of an adjoining estate, and in 1875 Lockey became owner of said buildings. The plaintiff knew of the erection of these buildings and did not object thereto, and had not then refused to release his equity of redemption, or intimated any intention to redeem.

Lockey continued in possession until he became bankrupt, in 1876, during which time the plaintiff made no claim that he was entitled to redeem, and did not demand an account of Lockey as mortgagee.

The defendants Cozzens and Burditt were appointed assignees in bankruptcy of Lockey; and on October 9, 1876, they filed a certificate of entry to take possession, in order to foreclose the mortgage; and on February 15, 1877, they assigned the mortgage to the defendants Putnam and Goss.

On December 9, 1876, the plaintiff demanded an account of Lockey and his assignees in bankruptcy, and offered to redeem the land from the mortgage ; and on March 22, 1879, he made a similar demand upon, and offer to, Putnam and Goss.

The facts found by the master in regard to the improvements made by Lockey before he obtained an assignment of the mortgage were so found upon evidence admitted against the plaintiff's objection.   The defendants contended that, under the decree, and upon the facts found in regard to the representations and conduct of the plaintiff, they should be allowed the value of these improvements.   The master was of opinion, that the decree of the court required him to allow the defendants the beneficial value of these improvements, and to charge them with the rents thereof, and that this was equitable upon the facts found.

In regard to the improvements made upon the rear of the lot, the master found that the defendants should be allowed the value of the buildings, as improvements, in 1875, the sum of $425; and charged the defendants as ground rent of the rear land, from 1869 to 1875, the sum of $25.   He further found, that since 1875 the defendants had used the rear part of the lot for the drying and storage of lumber, (except while the assignees in bankruptcy of Lockey were in possession,) for which they should be charged a certain sum a year.

In regard to the improvements made in 1862 and those made in 1875, the master found that they were not necessary to maintain said estate, but were permanent and beneficial thereto ; that the value of the improvements to the estate in 1864, when completed, and after Lockey had taken an assignment of the mortgage, was $1000; and that the defendants should be allowed interest on the permanent improvements.

The mortgage contained no clause requiring the mortgagor to keep the buildings insured for the benefit of the mortgagee, or permitting the mortgagee to insure at the expense of the

mortgagor. The plaintiff did not in fact insure the buildings while the defendants were in possession. The defendants effected insurance on the buildings; and, at the first hearing before the master, charged the plaintiff, in their account, with the premiums of insurance paid by them. One item charged in the account, and admitted by the plaintiff, was for a premium paid by Putnam and Goss for insurance effected by them as mortgagees in possession. On August 15, 1882, the dwelling-house was destroyed by a fire, which did not injure the rear buildings. Putnam and Goss recovered of the insurance company $1000 on their policy. At a hearing after the loss by fire, the master allowed the defendants to withdraw their charges for effecting insurance. The plaintiff contended that the defendants should account for the $1000, and could not withdraw the charge for the premiums. The master ruled that the defendants might withdraw the items for premiums, and were not chargeable with the $1000.

The master found that the plaintiff was entitled to redeem on payment of the sum of $1106.12, being the sum due on August 28, 1883; and that, if the defendants were not to be allowed the value of the improvements made before Lockey took an assignment of the mortgage, and were not chargeable with the rents and profits, the amount due the plaintiff on August 28, 1883, was $259.94.

The plaintiff filed the following exceptions to the report:

"1. To all findings of fact by the master found on evidence admitted against the plaintiff's objection. 2. To the allowance for improvements placed on the premises prior to the time when Lockey acquired the mortgage by assignment. 3. To the finding of the master that the defendants are not chargeable with the $1000 insurance money. 4. To all findings of the master crediting the defendants for permanent improvements and buildings placed on the estate. 5. To the finding of the master that the defendants had a right to withdraw items for insurance after they had been charged and admitted at a former hearing."

The case was heard before *Devens*, J., on the master's report and the exceptions thereto; and, at the request of the plaintiff, was recommitted to the master, with the following directions:

By reason of the decree heretofore made, and of the facts as found by the master, the petitioner, in order to redeem, should pay the fair value of the improvements placed upon the land, as that value is found to be at the time of the report of the master and of the decree for redemption to be based thereon. He should not pay the value of improvements which have been placed upon the land, but which at the time of such report and decree have ceased to exist thereon. For this reason he is not bound to pay for the $1000 worth of improvements which have been consumed by fire. After the date of the improvement of $425 in value, the defendants should continue to be charged with the fair rental value of the land, without the additional charge made to them for use or rent of this improvement; but the value of this improvement as it is found to exist at the date of the master's report should be allowed to them in the amount to be paid by the plaintiff.

At the subsequent hearing before the master, it was agreed that the value of the improvements which were to be allowed the defendants was, at the date of the former report, $250. The plaintiff contended that he was entitled to interest on the balance due him on January 1, 1878, which was the date when the account first showed a balance in his favor, and on the amounts charged the defendants yearly for the use of the land.

The master made a supplemental report, allowing the plaintiff a certain sum yearly for the use of the land, and showing that, omitting the items of interest, there was due the plaintiff on August 28, 1883, the sum of $209.77, or, if these items were added, the sum of $281.50.

Upon the filing of the master's report, *Devens*, J., ordered a decree to be entered that the defendants deliver up possession of the mortgaged premises, and discharge the mortgage; and, further, that they pay the plaintiff $281.50, with interest to the date of the decree, and rent at the rate allowed by the master from the date of his report, with costs.

The judge also ordered the execution of the decree to be suspended; and reported the case for the consideration of the full court.

*D. H. Merriam & G. A. Torrey*, for the plaintiff.

*H. Mayo*, for the defendants.

HOLMES, J.    The clauses in the decree for redemption direct-
ing that the defendants be allowed for the improvements made
upon the premises, and that the master report the value of such
improvements, &c., is merely a less formal equivalent for a
direction that the master inquire whether the defendants had
made any, and what, lasting or permanent improvements on the
premises, &c., as in *Webb* v. *Rorke*, 2 Sch. & L. 661, 676.   It
is proper that such a special direction should be inserted in
the decree if a *prima facie* case is made for it at the hearing,
but in itself it does not determine that there are improvements
to be allowed for.   That question is now before us.   Even if
this decree was intended to go further than is usual at that
stage, practically it leaves everything open, as it does not specify
what things are to be allowed for under the name of improve-
ments.   Upon the facts, as we shall show, it must be taken to
mean by improvements "lasting or beneficial improvements on
the estate;" *Gordon* v. *Lewis*, 2 Sumner, 143, 150; that is to
say, those of which the plaintiff actually receives the benefit.

Reasonable improvements may be allowed for, apart from
contract, upon principles of equity, and, in this Commonwealth,
by statute.   Pub. Sts. *c.* 181, § 23.   When the allowance is
made, however, it is made, not for the expenditure, with which
*ex hypothesi* the mortgagor had nothing to do, but for the ben-
efit which he actually receives from that expenditure.   The
mortgagor's having actually received the benefit is the only
ground for charging him, and it follows that, although justice
will ordinarily be done by crediting the mortgagee in account
with the sums expended, which is the usual direction in de-
crees, and is sanctioned by our statute, yet that "the true rule
undoubtedly is, that the mortgagor should be charged no more
of the cost, than that which is beneficial to the estate." *Reed*
v. *Reed*, 10 Pick. 398, 400.   *Boston Iron Co.* v. *King*, 2 Cush.
400, 405.   See also *Gordon* v. *Lewis*, 2 Sumner, 149.   *Shepard*
v. *Jones*, 21 Ch. D. 469, 478.

Of course a different rule could be established by contract,
and a mortgagor might bind himself by words or conduct to
pay the cost of structures at all events.   It is said, in England,
that notice given by the mortgagee to the mortgagor, and ac-
quiescence on the part of the mortgagor, render unnecessary an

inquiry whether the expenditure was reasonable. *Shepard* v. *Jones*, 21 Ch. D. 479. It does not follow that notice and acquiescence alone would change the rule as to the amount to be allowed. But if they ever would have that effect, there is nothing that can do so in this case. All that appears is, that the plaintiff knew (not that Lockey gave him notice) that Lockey was making improvements, and made no objections. But at that time both parties were expecting that a bargain was going through for the release of the equity of redemption to Lockey, so that, even if Lockey knew that the plaintiff knew that he was making improvements, it was understood by both that he was making them on his own account, on the strength of that anticipation. Hence any implication of an undertaking to pay the cost of the structures is out of the question, and the allowance to the defendants must be determined by the general principles of equity as to reasonable improvements.

In this view, as the dwelling-house was destroyed by fire before the account was taken, and the mortgagor, when he gets back the property, will get it without that improvement, he ought not to pay for it. It makes no difference that the house was burned after the decree for redemption. The ground on which the mortgagor is charged is inconsistent with such a distinction, and no case has been brought to our attention which sanctions it. See *Nixon* v. *Porter*, 38 Miss. 401; *Dungan* v. *Von Puhl*, 8 Iowa, 263, 271; *Stark* v. *Starr*, 1 Sawyer, 15, 20. We have assumed in favor of the defendants, without deciding, that the case stands as if Lockey had already purchased the mortgage when he moved the house upon the land, as it seems probable that he had made some arrangement looking to that end, and that his act is not to be regarded as that of a stranger. *Merriam* v. *Barton*, 14 Vt. 501.

The plaintiff properly makes no claim to the money received by the defendants for insurance upon the house, if he is not charged for the house. Also he does not dispute that he was properly charged in the account with the present value of the improvements still on the land, nor that, when such improvements are estimated according to their deteriorated value, the occupant is only to be charged for the rent of the land without the improvements. We do not reopen these questions. See

*Dungan* v. *Von Puhl*, and *Nixon* v. *Porter*, *ubi supra; Moore*
v. *Cable*, 1 Johns. Ch. 385.

This disposes of all the points which have been argued before
us except a matter which probably was not called to the atten-
tion of the justice who signed the final decree. It seems proper
that the decree should be modified so far as to require only
the defendants Putnam and Goss, who hold the mortgage and
have received the surplus, to pay it over ; and they alone should
be charged with costs. In other respects it will stand, with
such modifications as are necessary to bring it down to the
date of the decree.                          *Decree accordingly.*