## JOSEPH C. NUGENT

*vs.*

## THE BOSTON, CONCORD AND MONTREAL RAILROAD.

### Cumberland.    Opinion January 25, 1888.

*Railroads. Negligence. Contributory negligence. Leased railroad. Evidence.*

In the trial of an action on the case against a railroad corporation for a personal injury resulting from the alleged defective construction of the defendant's station-house, the question of contributory negligence, though depending upon undisputed facts, is properly submitted to the jury, when intelligent, fair-minded persons may reasonably arrive at different conclusions thereon.

A railroad corporation, over a section of whose track another company, by
virtue of a contract, runs its trains, is liable in tort to the latter's brake-
man, who, while in the due performance of his duty on his employer's train,
receives a personal injury solely by reason of the negligent construction of
the former's station-house.

When a railroad corporation leases its road and appurtenances by virtue of a
legislative enactment containing no provision whatever exempting it from
liability, the lessor is liable to one lawfully there, for a personal injury
which resulted solely from the original defective construction of its station-
house, though the lessee had long been in full possession and control under
the lease, and had covenanted therein to maintain, preserve and keep the
station-houses in as good order and repair as the same were in at the date of
the lease.

In an action by a brakeman for an injury received while ascending the side
ladder on a box car, which resulted from the proximity of the station-awning
to the car, testimony that no other awning on the road was like this one is
admissible.

In such an action the admission of testimony by an experienced brakeman on
the same train that the ladders were so variously constructed that the undi-
vided attention of a person ascending them was required, affords no ground
of exception to the defendant.

On exceptions and motion to set aside the verdict.

An action by a brakeman on the Portland and Ogdensburg
Railroad, for personal injuries received by reason of the negligent
construction of the awning at the station of the defendant com-
pany at Bethlehem Junction, New Hampshire.

The material facts are stated in the opinion.

The following is the testimony referred to at the close of the
opinion :

Eugene H. Sawyer, conductor of the train on which the
plaintiff was employed as rear brakeman at the time of the
accident, was called by the plaintiff, and, among other things,
testified that he had had daily experience in going up ladders on
moving cars for the last four years. He was then asked the
following questions, which were seasonably objected to by
defendant's counsel, but were admitted by the court.

" Q. Whether or not it requires the undivided attention of a
man going up and down a ladder on a moving car in that way ?

" A. I should say it did ; it does mine.

" Q. Why ?

" A. Because the ladders on the cars are not all alike. They

differ in a good many ways; the difference that bothers us most is the handle on the top of the car; sometimes it will be a rod of iron a foot and a half long to get hold of; then it will be just a small handle, just enough to get your hand hold of."

*Wilbur F. Lunt and Joseph W. Spaulding*, for the plaintiff.
A railroad company is liable for damage caused by the negligent construction of its station. *Heaven* v. *Pender*, 11 Q. B. Div. 503; *Railroad Co.* v. *Stout*, 17 Wallace, 661; *Tobin* v. *Railroad Co.* 59 Maine, 183; *Wendell* v. *Baxter*, 12 Gray, 494; *Toledo W. W. Ry. Co.* v. *Grash*, 67 Ill. 262; *St. L. Q. M. & S. Ry* v. *Fairbairn*, 4 S. W. Rep. 80; 2 Wood Ry. 1339; *Godley* v. *Haggerty*, 20 Penn. St. 387; *Phil. & Read. Rail. Co.* v. *Derby*, 14 How. (U. S.) 468; *Sawyer* v. *Rutland Railroad*, 27 Vt. 370; 2 Wood Ry. 1389, and other cases there cited; *Bennett* v. *L. & N. Ry. Co.* 102 U. S. 580; *Davis* v. *Cent. Cong. Society*, 129 Mass. 367; *Nickerson* v. *Tirrell*, 127 Mass. 236; *Carleton* v. *Franconia Iron Co.* 99 Mass. 216; *Tobin* v. *P. S. & P. R. Co.* 59 Maine, 188; *Larmore* v. *Crown Point Iron Co.* 2 Central Reporter, 409; *Snow* v. *H. Railroad*, 8 Allen, 441; *C. Railroad* v. *Armstrong*, 49 Penna. St. 186; 52 *Id.* 282; *Graham* v. *Northeastern Railroad Co.* 18 C. B. (N. S.) 229: Shear. & Red. on Neg. 101; Patterson Ry. Accident Law, 222, and cases there cited; *Yeomans* v. *Nav. Co.* 44 Cal. 71; Dicey on Parties, 19; *Marshall* v. *York R. Co.* 11 C. B. 655; *Martin* v. *G. I. P. R. Co.* L. R. 3 Exch. 9; Wharton on Negligence, § 439; *Graham* v. *N. E. Ry.* 18 C. B.; N. S. 114 E. C. L.; *Norris* v. *Androscoggin Railroad*, 39 Maine, 276; *Whitney* v. *A. & St. L. Railroad Co.* 44 Maine, 367; *Gardner* v. *L. C. & D. Ry.* 2 L. R. Ch. 201; *W. A. & G. Railroad* v. *Brown*, 17 Wallace, 445; *Y. & M. L. Railroad* v. *Winans*, 17 Howard, 30; *Beman* v. *Rufford*, 1 Sim. N. S. 550; *Winch* v. *B. L. & C. J. Ry.* 5 DeG. & S. 562; 16 Jur. 1035; *G. N. Ry.* v. *E. C. Ry.* 9 Hare, 306; *Black* v. *D. & R. Canal Co.* 22 N. J. Eq. 130; *M. R. R.* v. *B. & C. Railroad*, 115 Mass. 347; *Thomas* v. *W. J. Ry.* 101 U. S. 71; *Keep* v. *Indianapolis & St. Louis Railroad*, 10 Fed. Rep. 454; 3 McCrary, U. S. C.

C. 302. Liability of landlord generally for dangerous condition or unsafe structure. *King* v. *Pedly*, 1 ; Adolphus and Ellis, 822 ; *Roswell* v. *Prior*, 12 Md. 635 ; *King* v. *Moore*, 3 B. & Ad. 184 ; *Cheetham* v. *Hampson*, 4 Term Reports, 318 ; *Plumer* v. *Harper*, 3 New Hampshire, 88 ; *Woodman* v. *Tufts*, 9 *Id.* 88, 91 ; *Beswick* v. *Cunden*, Croke's Elizabeth, 402 ; *Waggoner* v. *Jermaine*, 3 Denio, 306 ; *Fish* v. *Dodge*, 4 Denio, 311 ; *House* v. *Metcalf*, 27 Conn. 631 ; Wood on Nuisances, § 837, and note 2, cases there cited ; § 827, *Id.* ; Sherman & Red. Negligence, § 56, and cases cited ; *Mahoney* v. *A. & St. L. Railroad*, 63 Maine, 68 ; *I. C. Railroad* v. *Barron*, 5 Wall. 90 ; *McElroy* v. *N. Railroad*, 4 Cush. 400 ; *Y. & M. L. Railroad* v. *Winans*, 17 How. 30 ; *St. Louis, &c. Railroad Co.* v. *Curl*, 28 Kan. 622 ; 11 Am. & Eng. R. R. Cas. 458 ; *Cook* v. *Milwaukee, &c. Railroad Co.* 36 Wis. 45 ; *Fontaine* v. *So. Pac. R. Co.* 1 Am. & Eng. Cas. 159 (54 Cal. 645) ; *Ill. Cent. Railroad Co.* v. *Kanoyse*, 39 Ill. 227 ; *Tol. &c. Railroad Co.* v. *Rumbold*, 40 Ill. 143 ; *Freeman* v. *Minn. &c. Railroad Co.* 7 Am. & Eng. Railroad Cases, 410 (Minn.) ; *Wasmer* v. *D. L. & W. R. Co.* 1 Am. & Eng. Railroad Cases, 122 (80 N. Y. 212).

The New Hampshire case of *Murch* v. *Concord Railroad*, 9 Foster, 124, is criticised in 2 Wood Ry. Law, 1339, and is in conflict with many well considered cases. See *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441 ; *Sawyer* v. *Rutland Railroad Co.* 27 Vt. 370 ; *Nelson* v. *Vermont, &c. Railroad Co.* 26 Vt. 717 ; *Graham* v. *N. E. R. Co.* 18 C. B. (N. S.) 229 ; *Low* v. *Grand Trunk R. Co.* 72 Maine, 313 ; *Tobin* v. *P. S. & P. R. Co.* 59 Maine, 183 ; *Wendall* v. *Baxter*, 12 Gray, 494 ; *Collett* v. *London, &c. Ry.* 16 Ad. & El. (N. S.) 984 ; Shearman & Redf. Negligence, 101 ; *Balsley* v. *St. L. A. & T. H. R. Co.* 119 Ill. 68 (25 Am. & Eng. Railroad Cases, 497) ; S. C. 6 Western Reporter, 469 ; *Singleton* v. *Southwestern R. Co.* 70 Ga. 464 (48 Am. R. 574) ; see valuable note in 25 Am. & Eng. Railroad Cases, pp. 501–2.

Negligence and due care. *Chicago, &c. R. Co.* v. *Swett*, 45

Ill. 197; *Ill. Cent. R. Co.* v. *Welch,* 52 Ill. 183 (4 Am. R. 593); *Chicago, &c. R. Co.* v. *Russell,* 91 Ill. 298 (S. C. 33 Am. R. 54); *Hough* v. *Railway Co.* 100 U. S. 213; 3 Wood Ry. 1482; *Baltimore, O. & C. R. Co.* v. *Rowan,* 1 Western Rep. 914; *Chicago & A. R. Co.* v. *Johnson,* 2 Western Rep. 388; 3 Wood Ry. 1480 and *seq.*; *Kearns* v. *Chicago, Milwaukee & St. Paul Railroad Co.* 22 Am. & Eng. Railroad Cases, 287 (Iowa); *Gould* v. *Chicago, Burlington & Quincy Railroad Co.* 22 Am. & Eng. R. Cases, 289; *Houston & Texas Rail. Co.* v. *Hampton,* 22 Am. & Eng. Railroad Cases, 291 (Texas); *Clark* v. *Richmond & D. Railroad Co.* 18 Am. & Eng. Railroad Cases, 78; *Riley* v. *Conn. Riv. Railroad,* 135 Mass. 292; *Wabash Ry. Co.* v. *Elliott,* 98 Ill. 481 (4 Am. & Eng. Railroad Cases, 651); *Pittsburg, &c. Railroad* v. *Sentmeyer,* 92 Penn. 276 (5 Am. & Eng. Railroad Cases, 508); *Lawless* v. *Conn. Riv. Railroad Co.* 136 Mass. 1; *Jeffrey* v. *K. & Des Moines. Railroad Co.* 5 Am. & Eng. Railroad Cases, 577; *Herbert* v. *Northern Pacific R. Co.* 8 Am. & Eng. 85; *Tissue* v. *B. & O. Railroad,* (Penn.) 6 Eastern Reporter, 853; *Baltimore, &c. Railroad* v. *Rowan,* 1 Western Reporter, 914; *Houston, &c. R. Co.* v. *Cram,* 49 Texas, 341; *Chicago, &c. Railroad Co.* v. *Swett,* 45 Ill. 197; *Illinois Cent. Railroad Co.* v. *Welch,* 52 Ill. 183; *Chicago, &c. Railroad Co.* v. *Russell,* 91 Ill. 293; *Hough* v. *Railroad Co.* 100 U. S. 213 (XXV. Law ed. 612); *Indiana Car Co.* v. *Parker,* 100 Ind. 181; Beach on Contributory Negligence, § 134.

No one of the objections to the admission of testimony was specific, no ground of objection was stated when the testimony was offered. *State* v. *Bowe,* 61 Maine, 171; *Harriman* v. *Sanger,* 67 Maine, 442; *Baker* v. *Cooper,* 57 Maine, 388; *Bonney* v. *Morrill,* 57 Maine, 368; *Staples* v. *Wellington,* 58 Maine, 453; *Glidden* v. *Dunlap,* 28 Maine, 379; *Emery* v. *Vinall,* 26 Maine, 295; *Lee* v. *Oppenheimer,* 34 Maine, 181; *White* v. *Chadbourne,* 41 Maine, 149; *Doane* v. *Baker,* 6 Allen, 260; *Peebles* v. *B. & Albany R.* 112 Mass. 498; *Spinney* v. *Bowman,* 4 N. Eng. Rep. 699; *State* v. *Bennett,* 75 Maine, 590; *Bean* v. *Dolliff,* 67 Maine, 228; *Soule* v. *Winslow,* 66 Maine, 447.

People might disagree as to whether the awning was a nuisance, therefore it was for the jury to say. *Shannon* v. *B. & Albany Railroad*, 78 Maine, 52 ; *Lesan* v. *M. C. Railroad Co.* 77 Maine, 91 ; *Ry. Co.* v. *Stout*, 17 Wall. 657.

*A. A. Strout*, for defendant.

People who have been employed upon railroads for a length of time adequate to give them necessary experience are bound to take notice and to have knowledge of structures which are placed in proximity to the trains upon which they are employed. It is as much negligence for them not to observe and take notice of these structures and to acquire a knowledge sufficient to enable them to exercise a proper judgment, as it is not to think of them, when they are employed in a dangerous occupation in connection, with them. Nor have the courts been silent in relation to this. principle.

Without wearying the court by quotation in this brief, I will, cite, in relation to this matter of due care, the following : Wood's Railway Law, Vol. 2, pp. 1098 and 1253 to 1262, and. cases there cited ; *Chase* v. *Maine Central Railroad*, 78 Maine. 346 ; *State* v. *Same*, 77 Maine, 538 ; *Taylor* v. *Curew Manufacturing Co.* 143 Mass. 470 ; *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79 ; *Thayer* v. *St. L. A. & T. H. Railroad*,. 22 Ind. 26 ; *Perigo* v. *C. R. & P. Railroad Co.* 52 Iowa, 276.

In *Gibson* v. *Erie Railway Co.* 63 New York, 449, the party injured was caught by projecting roof of depot and killed whilst climbing up over the side of the car. In granting a new trial the court says : " Here the structure was permanent in its. character, and the risk resulting from its location was apparent to the ordinary laborer as to the skilled mechanic or expert ; they were visible to all, and could be as well appreciated by the deceased, who had for many years resided at the place of the injury, as by the officers and. agents of the company." The case was also remanded because of contributory negligence. *Toomey* v. *London, &c. Railroad*, 3 C. B. 149 ; *Atchison, Topeka & Santa Fe Railroad* v. *Retford*, 18 Kansas, 245 ; Pear's Railroad Law, 379, and cases there cited.

It would be observed in this case that there was no contract between the plaintiff and the defendant corporation. Whatever contract or license to use the road of the defendant corporation there was, was with the Portland and Ogdensburg Railroad Company. This contract had existed for a long period prior to the accident, and had passed into the hands of a separate corporation. The plaintiff, accepting employment upon the Portland and Ogdensburg Railroad, and knowing that it runs over the track of another railroad, accepted the condition of such track, and any structures adjacent thereto, and consented to use them at his own risk and peril. It is not necessary to cite cases to this court to show that where the facts are uncontradicted the issue becomes a question of law and not of fact. *Grows* v. *Maine Central Railroad*, 67 Maine, 100 ; *Burns* v. *Boston & Lowell Railroad*, 101 Mass. 50.

The books are full of cases where a non-suit has been ordered because of the negligence of the plaintiff, where such negligence is shown with less certainty than in the present case. Of course the jury would find in a case against a railroad that the plaintiff was in the exercise of due care, no matter what the facts were, especially where the plaintiff lost an arm, and thereby appealed to the reasonable sympathies which every man entertains where there is misfortune and suffering.

In the case of *Murch* v. *The Concord Railroad Corporation*, 29 New Hampshire, 9, the court held that a railroad company, by giving permission to another railroad to use a part of their track, did not appoint themselves to make their track safe, nor to put it in repair, nor to make any change in its existing state ; such company, by contracting to let to another company the use of their track, was under no duty to a passenger of the other railroad. The claim of such passenger injured is on the company with whom he contracts.

The court is especially referred to the language of Judge BELL, found on pages 33 and 34, in which he says, that " Permission could not, of course, extend further in the case of such passenger than in the case of the railroad itself,—a permission to use the railroad as it is." The court is also referred to the case of

*Baylor* v. *D. L. & W. Railroad*, 40 N. J. L. 23 ; *Baltimore & Ohio Railroad* v. *Stricker*, 51 Md. 47 ; *Owen* v. *N. Y. C. Railroad*, 1 Lansing R. 108 ; *Devitt* v. *Pacific Railroad*, 50 Mo. 302 ; *Stettler* v. *C. & N. W. Railroad*, 46 Wisconsin, 497 ; *Same* v. *Same*, 49 Wisconsin, 609 ; Wood's Railway Law, Vol. 2, § 325, page 1333 *et seq.* and cases there cited.

No law is better settled than that the defendant would not be liable for the neglect of the employees of the Portland and Ogdensburg Railroad, and I cite, *Clarke* v. *C. B. & Q. Railroad*, 96 Ill. 43.

VIRGIN, J.    By a contract of March 1, 1884, the Portland & Ogdensburg Railroad Company, for certain valuable considerations therein expressed, was permitted, among other things, to run all of its through freight trains, for one year at least, over that portion of the defendant's tracks between certain named stations, between which was the Bethlehem station, the defendant " assuming all liability and risk of accident arising from defect of road bed or track or default of its employees or servants."

On June 19, 1884, while the permit was in full force, the Boston and Lowell Railroad Company leased for ninety-nine years the defendant's railroad, stations, etc., agreeing to save harmless the defendant " against all claims for injuries to persons during the term, from any and all causes whatever."

The plaintiff was rear brakeman on a Portland and Ogdensburg special freight train bound west.    While he, in pursuance of a signal for setting brakes, was rapidly ascending the iron ladder on the side of a box car to perform his duty of setting the brake thereon, the train being in motion, his head came in contact with the end of the depot awning, of same height as the car and eighteen inches therefrom, and he was thereby knocked off between the cars, and before he could extricate himself, his right arm was so crushed by the wheels of the saloon car that amputation became necessary.

The jury, after a charge to which, so far as the general merits of the case is concerned, no exception is alleged, returned a verdict for the plaintiff for three thousand one hundred dollars.

Under the instructions, the jury must have found that the awning was negligently constructed on account of its proximity to the passing car; (2) that the injury was caused solely thereby; and (3) that the plaintiff was in the exercise of ordinary care at the time of the injury.

1.   It is contended that the plaintiff was guilty of contributory negligence; and that as the facts in relation thereto were undisputed, the question was one of law and should, therefore, have been decided by the presiding justice, which he declined to do, but submitted it to the jury.   While there are numerous cases wherein questions of the negligence of both parties in actions of this nature have been decided by the court on undisputed facts, still the negligence of neither party can be conclusively established by a state of facts from which different inferences may be fairly drawn, or upon which fair minded men may reasonably arrive at different conclusions.   *Brown* v. *European & N. A. Railroad Co.* 58 Maine, 384; *Leasan* v. *Maine Central Railroad Co.* 77 Maine, 85, 91; *Shannon* v. *Boston & Albany Railroad Co.* 78 Maine, 52, 60; *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441; *Treat* v. *Boston & L. Railroad Co.* 131 Mass. 371; *Peverly* v. *Boston*, 136 Mass. 366; *Lawless* v. *Conn. Riv. Railroad Co.* 136 Mass. 1; *Railroad Co.* v. *Stout*, 17 Wall. 657, 663–4.

As a practical illustration of this proposition: The conductor of a freight train had resided at the place of accident for twenty years, and as conductor and brakeman passed the station once or twice daily for seven years.   Just as his train started up, he caught hold of the side ladder of a passing car, and, without any call of duty there, as he climbed toward the top, was struck and killed by the roof of the depot which projected over, and within thirty-four inches of the car; and the court was divided on the questions of negligence involved.   *Gibson* v. *Erie Railway Co.* 63 N. Y. 449.   So in another case, where a brakeman (the plaintiff), who had pulled out the pin and disconnected a portion of the train from the engine, was walking beside the train, and on signal for brakes, ran up the side ladder of a car and was struck, knocked off and lost his arm, by the awning which pro-

jected within eighteen inches of the car; the court held the plaintiff not guilty of contributory negligence, but set aside the verdict of ten thousand dollars as excessive. The court remarked, " it would be preposterous in us to say, or to ask a jury to say, that a brakeman engaging in the service of the company must be. held to know whether or not there may be one among the station-houses whose roof or awning so projects over the line of the road, that a brakeman on a freight train, in the performance of his duties, would be liable to be swept from the train by collision with it." *Ill. Cent. Railroad Co.* v. *Welch*, 52 Ill. 183.

We are of opinion that the presiding justice very properly submitted to the jury the question of the defendant's negligence and also that of the plaintiff's exercise of ordinary care.

Moreover, a careful examination of all the testimony bearing upon these questions, aided by the exhaustive argument of counsel, has failed to satisfy us that we ought to interpose and set the verdict aside. And without taking space to state our reasons at length, we remark: The train never stopped at this station, except when obstructed by another, and occasionally down by the tank for water. His attention was never particularly called to the nearness of the awning, as he had no occasion to notice it in passing. When the accident happened, the plaintiff was engaged in the prompt performance of a call to active duty. The exigency caused by the repeated starting and stopping of the mixed train required his speedy ascent to the top of the car by means of the ladder. Before he reached it, his car being in motion, arrived at the awning. Due care on the part of the defendant required space enough between the car and the awning for reasonable action of body, arms and legs of the brakeman, whose duty required him to ascend the ladder there. It was deficient in this respect, and the plaintiff, with his attention properly fixed on his duty, was struck. It is no answer, that the train, though on a down grade of thirty feet to the mile, might be handled by the engine when working steam. The plaintiff's duty was not to rely on the possibility of the engine holding the train, but to perform the duty signaled by the conductor standing on the engine; and he lost his right arm in

the prompt attempt to perform it, in consequence of the defend-
ant's faulty awning.    The acts of the plaintiff " cannot be judged
of by the rule applicable to persons engaged in no special or
particular duty."    The plaintiff's previous knowledge of the
awning must, on account of his few opportunities for gaining it,
have been comparatively slight, and was " by no means decisive.
The service then and there to be performed was of a character to
require his exclusive attention to be fixed upon it, and that he
should act with rapidity and promptness ; and it could hardly be
expected that he should always bear in mind the existence of
the defect, even if he knew it, or be prepared at all times to avoid
it."    *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441, 450.

But while this rule may not be seriously questioned as between
a railroad company and its own employees, the defendant
challenges its application as between it and the plaintiff.    This
presents the question, whether a railroad company, over a section .
of whose track another company, by virtue of a contract, runs
its trains, is liable in tort to the latter's brakeman, who, without
the fault of himself or of his co-employees, receives a personal
injury while in the performance of his duty on his employer's
train, solely by reason of the negligent construction of the
former's depot.    We are of opinion that it is.

In such a case the only materiality which attaches to the con-
tract between the companies, is to make certain that the plaintiff
was lawfully, and not a trespasser on the defendant's road.    And
although the defendant, in its contract with the P. and O.
company, in express terms " assumed all liability and risk of
accident arising from defect of road bed, track, or default of its
employees," nothing was thereby added to the defendant's legal ·
obligation and duty ; these terms did not express all which the
law required of railroad companies as to the reasonable safety of
its station-houses.    *Tobin* v. *Portl. S. & P. Railroad Co.* 59
Maine, 183.    It is common learning that as a compensation for
the grant of its corporate franchise intended in large measure to
be exercised for the public good, the common law imposed upon
the defendant a duty to the public independent of contract and
coextensive with its lawful use, to keep its road and its appurte-

nances in a reasonably safe and proper condition. *Thomas* v. *Railroad,* 101 U. S. 71, 83 ; *Bean* v. *At. & St. L. Railroad Co.* 63 Maine, 293, 295. If the cause of action were a breach of the contract, the plaintiff could not maintain an action thereon for want of privity. But this is an action *ex delicto,* for an injury caused by a neglect of a duty created by law. Broom's Com. (4th ed.) 675-6, and cases. And for the neglect of such a duty privity is not essential to the maintenance of an action of tort therefor. *Campbell* v. *Portl. Sug. Co.* 62 Maine, 552, 564 ; Broom's Com. 673 *et seq.*

This principle is variously illustrated by the numerous cases cited in Broom's Com. 655–670. Thus a railroad company is liable for the loss of a passenger's luggage whose fare was paid by another, not on account of breach of contract, but of legal duty. *Marshall* v. *York N. & B. Railroad Co.* 11 C. B. (73 E. C. L.) 655.

So where the defendant sold naphtha to one known to him as a retailer of fluids, to be burned in lamps for illuminating purposes, and the retailer sold a pint thereof to the plaintiff to be used in a lamp and it exploded, the defendant was held liable, " not upon any supposed privity between the parties, but upon a violation of duty in the defendant, resulting in an injury to the plaintiff." *Wellington* v. *Downer Ker. Oil Co.* 104 Mass. 64, 67.

So where a chemist compounded a hair wash and knowingly sold it to a husband for the use of his wife, who was injured by its use, the wife sustained an action of tort for the injury, on the ground of the defendant's breach of duty. *George* v. *Skinnington,* (L. R.) 5 Exch. 1.

In like manner, " where a stage proprietor," said PARKE, B., " who may have contracted with the master to carry his servant, is guilty of neglect and the servant sustains personal damage, he is liable to the latter ; for it is a misfeasance toward him, if, after taking him as a passenger, the proprietor or his servant drives without care, as it is a misfeasance towards every one travelling on the road. So if a mason contracts to erect a bridge or other work over a public road, which he constructs not according to the contract, and the defects are a nuisance, a

third person, who sustains an injury by reason of its defective construction, may recover damages from the contractor, who will not be allowed to protect himself from liability by showing an absence of privity between himself and the injured person, or by showing that he is responsible to another for breach of the contract." *Longmeid* v. *Holliday*, 6 Eng. L. & Eq. 563.

So, where a station being in the joint occupation of the defendant and another railway, the plaintiff's decedent, a blacksmith in the service of the other railway, while engaged in repairing one of its wagons on a siding at the station, was killed by the negligent shunting of the defendant's train on that siding —a motion to set aside a verdict for the plaintiff was overruled. *Vose* v. *L. & Y. Railway*, 2 H. & N. 728.

And it seems that an apothecary who administers improper medicine to his patient, or if a surgeon unskilfully treat him to his injury, is liable to the patient, even when a father or friend of the patient was the contractor. *Pippin* v. *Sheppard*, 11 Price, 40; *Gladwell* v. *Steggall*, 5 Bing. (N. C.) 733, (E. C. L.) 292; *Thomas* v. *Winchester*, 2 Seld. 397.

The principle is sustained in the well considered case of *Sawyer* v. *Rutland & B. Railroad Co.* 27 Vt. 370, which was re-examined and reaffirmed by the same learned court in *Merrill* v. *Cent. Vt. Railroad Co.* 54 Vt. 200; also in *Smith* v. *New York & H. Railroad Co.* 19 N. Y. 127; *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441; Pierce, Railroads, 274; Patter. Ry. Ac. § 228; 2 Wood, Railway L. 1338–9, and notes.

We are aware that this view is not in accordance with *Murch* v. *Concord Railroad Co.* 29 N. H. 35, and *Pierce* v. *Concord Railroad Co.* 51 N. H. 593, which cases were cited by a divided court in this state on another point; (*Mahoney* v. *At. & St. L. Railroad Co.* 63 Maine, 72;) but notwithstanding our high opinion of the learned court which pronounced those opinions, we think the views herein declared are more satisfactory.

Our opinion, therefore, is that the plaintiff had the lawful right, as brakeman on the train of the P. & O., to pass and repass by the Bethlehem station-house of the defendant which, therefore, owed a duty to him to construct and maintain its station-house

there in such a reasonably safe manner that its awning would not injure him while in the performance of his duty with due care ; and that a negligent breach of that duty by the defendant, having resulted in a personal injury to the plaintiff without fault on his part, he is entitled to maintain this action therefor, unless the leasing and consequent full possession of the defendant's road by the B. and L. constitutes a defence.

It is declared to be the settled law of this country that one railroad corporation cannot, without statutory authority, divest itself of, or relieve itself from, any duty or liability imposed by its charter or the general laws of the state, by leasing its road and appurtenances to another. *York & M. L. Railroad Co.* v. *Winans*, 17 How. 30 ; *Thomas* v. *Railroad Co.* 101 U. S. 71, 83.

Assuming the lease of the defendant road, station-houses, etc., to the B. and L. to have been duly authorized by the respective legislatures of the states which granted their charters, and that the lessee had, months before the plaintiff's injury, received under the lease full possession, management and control, was the defendant thereby relieved from liability to this plaintiff for his injury ?

This court has held that an authorized lease of a railroad does not relieve the lessor from the liability under the general statute, for an injury caused to property along its line by fire communicated by a locomotive of the lessee. *Pratt* v. *At. & St. L. Railroad Co.* 42 Maine, 579 ; *Stearns* v. *Same*, 46 Maine, 95. In Massachusetts, both lessor and lessee are held liable for the injury under a like statute. *Ingersoll* v. *Stockbridge & P. Railroad Co.* 8 Allen, 438 ; *Davis* v. *Prov. & Wor. Railroad Co.* 121 Mass. 134.

Courts of the highest respectability have held, in well considered opinions, that the duly authorized leasing of one railroad to another does not absolve the lessor from liability to a passenger for injury caused by the negligent acts of the lessee's employees, unless the statute authorizing the lease contains an express exemption to the lessor ; that " grants to corporations, whether of powers or exemptions, are to be strictly construed, and their obligations are to be strictly performed, whether they may be

due to the state or to individuals." *Singleton* v. *Southwestern Railroad*, 70 Ga. 464 (48 Am. R. 574) ; *Nelson* v. *Vermont & Can. Railroad Co.* 26 Vt. 717 ; 1 Redf. Railways, 590.

This view is adopted and sustained in an opinion reviewing the cases and authorities, by the court in Illinois. The court, in its opinion, does not rest its decision "upon the narrow ground alone of the lessee being in the exercise of a franchise which belonged to the lessor, and in so doing is to be held as the servant of the lessor corporation ; but in consideration of the grant of its charter, the corporation undertakes the performance of duties and obligations toward the public ; and there is a matter of public policy concerned that it should not be relieved from the performance of its obligations without the consent of the legislature," adding, "there is no express exemption in the statute which authorized the lease." *Balsley* v. *St. Louis A. T. H. Railroad Co.* 6 West. Rep. 469 ; see also Pierce, Am. Ry. L. 244.

In this state, where the defendant had leased its road under the authority of a statute which expressly provided that "nothing contained therein . . shall exonerate the lessor from any duties or liabilities imposed upon it by the charter or by the general laws of the state," a divided court held that the lessee, and not the lessor, was liable to a passenger injured by an assault and wrongful expulsion from its train by one of the lessee's servants. *Mahoney* v. *At. & St. L. Railroad Co.* 63 Maine, 68. This case, however, does not meet the facts in the case at bar ; for there the injury complained of resulted solely in the wrongful acts of the servant of the lessee, who had sole control of the trains, and not, as here, from the wrong of the lessor in the negligent original construction of its depot.

And herein, as we think, lies the true distinction which marks the dividing line of the lessor's responsibility. In other words, an authorized lease, without any exemption clause, absolves the lessor from the torts of the lessee resulting from the negligent operation and handling of its trains and the general management of the leased road, over which the lessor could have no control. But for an injury resulting from the negligent omission of some duty owed to the public, such as the proper construction of its

road, station-houses, etc., the charter company cannot, in the absence of statutory exemption, discharge itself of legal responsibility. *St. Louis W. & W. Railway Co.* v. *Carl*, 28 Kan. 622 (11 Eng. & Am. R. Cas. 458).

The covenant in the lease to " save the lessor harmless," etc., is predicated of an implication of a primary liability on the part of the lessor. It is an obligation which in nowise affects the plaintiff, or the defendant's liability to him, but is simply a contract for reimbursement for such damages as may in anywise be recovered against it by the plaintiff and other lawful claimants, whose injury results from its breach of duty owed them.

We are also of opinion that the defendant is liable, under the rule which governs the responsibility of a lessor of demised premises, for their condition. For it is settled law, that when the owner lets premises which are in a condition which is unsafe for the avowed purpose for which they are let, or with a nuisance upon them when let, and receives rent therefor, he is liable, whether in or out of possession, for the injuries which result from their state of insecurity, to persons lawfully upon them; for by the letting for profit, he authorizes a continuance of the condition they were in when he let them, and is therefore guilty of a nonfeasance. Among the numerous cases supporting this general view are : *Rosewell* v. *Prior*, 2 Salk. 459 (S. C. more fully reported, 12 Mod. 635, 639), where the defendant erected a house, thereby obstructing the plaintiff's ancient lights, and demised it to another ; and the court held the " action well brought . . for before his assignment over, he was liable for all consequential damages, and it shall not be in his power to discharge himself by granting over." See also *Rex* v. *Pedly*, 1 Ad. & E. 822 ; *Staple* v. *Spring*, 10 Mass. 72 ; *Fish* v. *Dodge*, 4 Denio, 311 ; *House* v. *Metcalf*, 27 Conn. 631 ; *Todd* v. *Flight*, 9 C. B. (N. S.) 377. In the last case EARLE, C. J., after reviewing *Rex* v. *Pedly*, and *Rosewell* v. *Prior*, said : " These cases are authorities for saying that, if the wrong causing the damage arises from the nonfeasance or the misfeasance of the lessor, the party suffering damage from the wrong may sue him. And we are of opinion that the principle so contended for

on behalf of the plaintiff is the law, and that it reconciles the cases." Also, *Nelson* v. *Liverpool Brewery Co.* (L. R.) 2 C. P. 311; *Awing* v. *Jones*, 9 Md. 108; *Gandy* v. *Jubber*, 5 B. & S. 76; S. C. on error, 5 B. & S. 486; see opinion S. C. 9 B. & S. 15; *Stratton* v. *Staples*, 59 Maine, 94. This principle is recognized in *Campbell* v. *Portland S. Co.* 62 Maine, 552, and in *McCarthy* v. *York Co. Sav. Bank*, 74 Maine, 315, 325; *Burbank* v. *Bethel S. M. Co.* 75 Maine, 373, 383; *Allen* v. *Smith*, 76 Maine, 335, 341.

See also, *Godley* v. *Haggarty*, 20 Pa. 387, affirmed in *Carson* v. *Godley*, 26 Pa. 111, where buildings were let to the government as bonded ware houses, and being defectively built and of insufficient strength, they fell by reason of storage of heavy merchandise.

So, in Maryland, in *Albert* v. *State*, 6 Cent. Rep. 447, the court of appeals approved the instruction: "If the jury found that the defendant was the owner of the wharf and rented it to the tenant, and that at the time of the renting the wharf was unsafe and the defendant knew, or by the exercise of reasonable diligence could have known of its unsafe condition, and the accident happened in consequence of such condition, then the plaintiff was entitled to recover."

So in *Swords* v. *Edgar*, 59 N. Y. 28, the court, after an elaborate review of the cases, held that the lessors of a pier, in the possession of their lessee from whom they received rent for it, were liable for an injury received by a longshoreman engaged in discharging a cargo thereon, the cause of the injury being a dangerous defect which existed at the time of the demise.

In a very recent case in Rhode Island, of like facts, the court held both lessor and lessee jointly liable. *Joyce* v. *Martin*, 4 N. Eng. Rep. 796; see also the recent case in New Jersey, of *Rankin* v. *Ingwerson*, 8 Cent. Rep. 371; also a Massachusetts case, *Dalay* v. *Savage*, 4 N. Eng. Rep. 863.

We are aware that there are a few cases which hold that, even if premises are dangerous when demised, the lessor is not liable to one injured thereby, if the tenant in the lease covenanted to keep them in repair. *Pretty* v. *Bickmore*, (L. R.) 8 C. P.

401. And the same principle was subsequently affirmed in a case of very similar facts. *Gwinnell* v. *Eamer*, (L. R.) 10 C. P. 658 ; see also *Leonard* v. *Storer*, 115 Mass. 86, where the lessee covenanted to " make all needful and proper repairs, both internal and external." The language of the court when taken in connection with the facts is explainable in consonance with the early English cases before cited. See also the *dictum* in the recent case in Massachusetts, already cited, of *Dalay* v. *Savage*.

But this principle has been ably reviewed in the strong opinion of FOLGER, J., in *Swords* v. *Edgar*, *supra*. This opinion declines to accept the doctrine of the above cases for the reason that they " ignored the rule announced in *Rosewell* v. *Prior*, (*supra*) and followed and established in many cases." FOLGER, J., speaking for the whole court upon this question, said : " The person injuriously affected by the ruinous state of the premises demised, has no right nor privity in the covenant. He is not given thereby a right of action against the lessee greater nor more sure than he had before. He has the right, without the covenant. The covenant is a means by which the lessor may reimburse himself for any damages in which he is cast by reason of his liability. But it is an act and obligation between himself and another, which does not remove nor suspend that liability. It is not so, that a person on whom there rests a duty to others, may, by an agreement between himself and a third person, relieve himself from the fulfillment of his duty. Surely an ineffectual attempt to fulfill would not ; as if in this case, insufficient repair of the pier had been made by a builder who had contracted with the lessor to do all that was needful to make the pier secure for all comers. A covenant taken from a lessor to keep in order and repair, is no more effectual than a contract with a builder to the same end. Both may afford an indemnity to the lessor, but neither can shield him from responsibility." The New Jersey case of *Rankin* v. *Ingwerson*, *supra*, sustains the same view. And we adopt the doctrine of the case from which we have so largely quoted as sound on legal principles and public policy.

And even if a lessee's covenant would, when broad enough in its terms, operate a relief of the lessor's liability, the covenant

here would not affect the case in hand, for it is restricted and limited to "maintaining, preserving and keeping the station-houses in as good order and repair as the same now are, so that there shall be no depreciation in the general condition thereof, at any time during the term."

The testimony as to the proximity of the awnings at the other stations had a legitimate bearing on the question of the exercise of care on the part of the plaintiff; and the defendant pursued the same line of inquiry not only on cross examination, but in the direct examination of its own witnesses, Stowell and Winters. We think also that Sawyer's testimony was legitimate.

*Motion and exceptions overruled.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.