## BRISCOE *v.* SOUTHERN KAN. RY. Co.

### (*Circuit Court, W. D. Arkansas.* October 5, 1889.)

1. COURTS—WESTERN DISTRICT OF ARKANSAS—SOUTHERN KANSAS RAILROAD COMPANY IN INDIAN TERRITORY.
    The act of congress of July 4, 1884, gives to the circuit or district court of the western district of Arkansas jurisdiction over suits by or against the Southern Kansas Railroad Company, such company having a right, by the act of congress, to build its road and operate the same in the Indian country.

2. SAME—CITIZENSHIP.
    The claim of jurisdiction of this court must be based on the subject-matter, and cannot depend on the citizenship of the parties.

3. SAME—FEDERAL QUESTION.
    The court has jurisdiction because this is a suit arising under a law of the United States.    When is a suit one arising under a law of the United States?    When it appears that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of a law of the United States, or sustained by the opposite construction.

4. SAME—TORTS IN INDIAN COUNTRY.
    Prior to the act of July 4, 1884, the plaintiff could have had no remedy in the Indian country for the injury caused by the tort of defendant; therefore, he had no remedy anywhere.

5. SAME.

When that act of congress gave for the first time a remedy, the right of plaintiff became for the first time a perfect right.

6. SAME.

Until this time it was a remediless right, and, practically, was no right, as a right without a remedy is no right. This law of congress gave the plaintiff a right or privilege for the first time.

7. SAME.

Jurisdiction exists in a court of the United States as well where an act of congress for the first time gives a right of action, thus affording a remedy, as where it creates a right. In either case it is the existence of a claim to a right or privilege that is founded on a law of congress, and is therefore a case arising under a law of the United States,—one where a party comes into court to demand something conferred on him by a law of congress.

8. RAILROAD COMPANIES—LEASES—LIABILITY FOR TORTS.

In a case where a railroad company has legal authority to lease its road, and does lease it, and turns over the whole control and management of the road to the lessee, it would not be liable for damages caused by the torts of the lessee. To absolve the lessor from liability the lease must be authorized by legislative authority.

9. SAME.

A corporation cannot absolve itself from the performance of its obligations to the public without the consent of the legislature expressly given.

10. SAME.

The lessor is absolved from liability by legislative authority, in effect, when the lease is authorized by law.

11. SAME—RECOGNITION OF EXISTENCE OF COMPANY.

The authority is not given by the act of congress of July 4, 1884, to the Southern Kansas Railroad Company, to lease its road situated in the Indian country. This authority to lease must be expressly given. Congress simply recognized the Southern Kansas Railroad as a Kansas corporation, having an existence under the laws of Kansas, and gave to it certain rights in the Indian country, such as the right to build its road through that country and exercise all the ordinary powers incident to the ownership, construction, and operation of its road.

12. SAME—FOREIGN CORPORATIONS—STATE CHARTERS.

A state, by chartering a corporation, cannot confer upon it a legal right to act within the jurisdiction of another state.

13. SAME.

Every power which a corporation exercises in a state other than the one creating it depends for its validity upon the laws of the sovereignty in which it is exercised.

14. SAME—CONFLICT OF LAWS.

Courts of justice of a country have always expounded and executed contracts according to the law of the place in which they were made, provided that law was not repugnant to the laws or policy of their own country.

15. SAME—COMITY AS TO POWERS OF FOREIGN CORPORATIONS.

By the comity of nations foreign corporations are allowed to make contracts, within their respective limits, not contrary to their known policy, or injurious to their interests.

16. SAME.

By this principle a railroad corporation has the right to exercise all of its ordinary powers in a state other than that which created it,—such powers growing out of its franchise,—such as making contracts in regard to the transaction of its business, etc.

17. SAME.

But under such a principle of comity a railroad company cannot exercise, out of the state which created it, an extraordinary power, such as is involved in leasing its road which is situated out of said state; and, when the only authority to lease it is contained in its home charter, it cannot lease a road owned by it situated beyond the limits of the jurisdiction of such home charter, so as to get rid of its responsibility to the public, which it assumed when it accepted the franchise. The leasing of its road by a railroad company is the exercise of an extraordinary power, which cannot be exercised by such company unless express authority is conferred on it.

18. SAME.

Railroad companies being public corporations so far as to be subjected to control by legislative action, they can do no act which would amount to a renunciation of their duty to the public, or which would directly and necessarily disable them from performing it. They cannot, therefore, without express authority, convey away

by lease for a long time their franchises and corporate rights. But they may contract debts, purchase on credit, and mortgage their personal property not affixed to the road, though used in operating it, as doing these things would be but the exercise of ordinary powers. The laws of Kansas granting to defendant the right to lease its road cannot operate beyond the sovereignty of Kansas.

(*Syllabus by the Court.*)

At Law.

This is a suit brought by plaintiff to recover damages of defendant for the killing of his horses by the carelessness and negligence of defendant's agents or servants in running its engine and train of cars over said horses, when the same could have been avoided by the exercise of reasonable care on the part of such agents or servants. The defendant filed its answer, denying the allegations of plaintiff's complaint as to the negligent killing, and setting up that before the killing of said horses defendant had leased its road for 99 years to the Atchison, Topeka & Santa Fe Railroad Company; that the control and management of said railroad was entirely in the hands of the lessee, and the running of trains over it was by the agents and servants of the lessee, and the defendant had nothing to do with such control, management, or the running of trains on said road. The case was tried. Verdict for plaintiff. Defendant filed its motion for new trial, and in it complained specially that the court erred in instructing the jury that the lease of defendant to the Atchison, Topeka & Santa Fe Railroad Company was unauthorized by law, and therefore void, and that, such lease being void, the lessor was not free from liability for the negligent acts of the lessee. The motion for new trial was overruled. The other points raised in the case fully appear in the opinion of the court.

*Barnes, Mellette & Boudinot*, for plaintiff.

*Duval & Cravens, Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for defendant.

PARKER, J., (*after stating the facts as above.*) The first question is, did the eighth section of the act of congress of July 4, 1884, give the plaintiff the right to bring a suit in this court? The section is—

"That the United States circuit and district courts for the western district of Texas, the western district of Arkansas, and the district of Kansas, and such other courts as may be authorized by congress, shall have, without reference to the amount in controversy, concurrent jurisdiction over all controversies arising between said Southern Kansas Railroad Company and the nations and tribes through whose territory said railway shall be constructed. Such courts shall have like jurisdiction, without reference to the amount in controversy, over all controversies arising between the inhabitants of said nations or tribes and said railway company; and the civil jurisdiction of said courts is hereby extended within the limits of said Indian Territory, without distinction as to citizenship of the parties, so far as may be necessary to carry out the provisions of this act."

Counsel for defendant contend that the last clause of the section, to-wit, "so far as may be necessary to carry out the provisions of this act," is a limitation to the section of such a nature as to limit the jurisdiction of the federal courts to such controversies as may arise between the

tribes or nations through whose territory the road is constructed and the inhabitants of such tribes and nations to matters necessary to carry out the provisions of the act,—in other words, it limits it to such suits between the tribes and nations, or members of the tribes and nations, and the railroad company, as may arise under the act granting the right of way, and pertaining to the right of way, and damages for the same; and that the same cannot be extended to a suit to recover for a common-law tort, a recovery upon which depends in no manner whatever upon the construction of the act granting the right of way to the railroad company. If this proposition is true, the nation or tribe, or the inhabitants thereof, were left by congress without any remedy for torts committed by the railroad company; for, as there is no remedy for torts such as was sued for in this case at the place where the same was committed, there could be no remedy anywhere. As the plaintiff could not sue in the Indian country, he could not sue anywhere. *Le Forest* v. *Tolman*, 117 Mass. 109. It is there decided, by Justice GRAY, that to maintain an action of tort founded upon an injury to person or property, and not upon a breach of contract, the act which is the cause of the injury and the foundation of the action must be actionable or punishable by the law of the place in which it is done. The latest case on this subject is *Carter* v. *Goode*, 50 Ark. 156, 6 S. W. Rep. 719, where the doctrine that is well sustained by American and English law, as announced in the case of *Le Forest* v. *Tolman*, was fully and clearly recognized. Then the plaintiff was remediless, unless the provisions of this act gave him a remedy. The nations of Indians through whose lands the 120 miles of the Southern Kansas Railroad passes have many rights that may be destroyed or affected by the tortious acts of the defendant. There are many resident Indians, and many lawful residents in these nations who are not Indians. They have rights that may be affected or destroyed by the torts of the defendant. Did congress intend that this road should obtain from the United States the franchise which gave it the right to build its road, own it, run it, and receive its earnings, and the lawful residents of this country, for a distance of 120 miles, were to be left without a remedy for an injury to personal property, no matter how great the same might be, caused by the negligent and tortious conduct of defendant's agents? This is hardly to be presumed. Unless there is an entire absence of any language in the act which will, by a reasonable construction, warrant the conclusion that it was the purpose of congress to afford a remedy, the act must be construed to harmonize with the purpose of congress to promote the right and secure justice by affording a means of redress to the lawful inhabitants of these nations for a tortious act committed by defendant. The language of the eighth section is: "Such courts shall have like jurisdiction, without reference to the amount in controversy, over all controversies arising between the inhabitants of said nations or tribes and said railway company." Over all controversies is very comprehensive. This is one of the provisions of this act, to which jurisdiction, without distinction as to citizenship of parties, is extended to the courts to carry out. Mr. Briscoe, the plaintiff, upon the proof, is an in-

habitant of the Chickasaw nation. His *status* as such is defined by Bouvier, (volume 1, p. 709,) where he says: "An inhabitant is one who has his domicile in a place." Briscoe had his residence at Purcell, in the Chickasaw nation, and it was a legal residence, as he was living there upon a permit. That was his fixed abode. He had none other. Therefore he was an inhabitant by authority of the case of *In re Wrigley*, 4 Wend. 603, and in fact by all the authorities.

To give this court jurisdiction, the right to claim it must grow out of the subject-matter. It must be a suit or a case arising under a law of the United States. When is it a suit arising under a law of the United States? When it appears that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of a law of the United States, or sustained by the opposite construction, the case will be one arising under a law of the United States, and one of which the federal courts have jurisdiction, regardless of the citizenship of the parties. *Cohens* v. *Virginia*, 6 Wheat. 264; *Osborn* v. *Bank*, 9 Wheat. 758; *Starin* v. *New York*, 115 U. S. 257, 6 Sup. Ct. Rep. 28, and authorities there cited; *Insurance Co.* v. *Wisconsin*, 119 U. S. 473, 7 Sup. Ct. Rep. 260.

As far as this defendant has rights in the Indian country, it is equivalent to a corporation created by an act of congress; or, if this cannot be said to be true, it is a recognition, to the extent provided by the act of congress, of a corporation in existence, having been created under the laws of Kansas; and upon this corporation, by this act of congress, there is conferred the right to build and run its road through the Indian country, and exercise all the ordinary powers incident thereto. Every right defendant has in the Indian country it obtained from the act of congress. This, by the doctrine of the case of *Osborn* v. *Bank*, 9 Wheat. 739, raises a federal question. I think this doctrine is abundantly sustained by the *Removal Cases*, 115 U. S. 11, 5 Sup. Ct. Rep. 1113. Mr. Justice BRADLEY, in these cases, said:

"The exhaustive argument of Chief Justice MARSHALL, in the case of *Osborn* v. *Bank*, 9 Wheat. 738, * * * renders any further discussion unnecessary to show that a suit by or against a corporation of the United States is a suit arising under the laws of the United States."

The case is one arising under a law of the United States, and consequently there would exist a federal question. If a federal question exists when the corporation is one created under the laws of the United States, when a corporation already created under the laws of a state is permitted by an act of congress to enter a country over which the United States has jurisdiction, and there to exercise the ordinary powers of a railroad corporation, this would create a federal question, as well as in the other case. But the fact that a federal question exists in the case has a more reasonable foundation than this. Here is a right that for the first time becomes a perfect right by its receiving a legal recognition by the provision, for the first time, of a remedy by this act of congress. Until this time it was a remediless right, and, practically, was therefore no right, as a right without a remedy is practically no right. Here a remedy

was for the first time given by a law of the United States, and thus the right, as having an existence, was for the first time recognized by the law-making power, and provision was made by such power for its enforcement. This gives the plaintiff a right or privilege which arises under a law of the United States, and gives him the right to come into the federal court to enforce the right, the same as though the right itself had been created by an act of congress. Why does not jurisdiction exist in a court of the United States as well where the act of congress for the first time gives a right of action as when it creates a right? In either case it is the existence of a claim to a right or privilege that is founded upon a law of congress. In either case it is a case arising under a law of the United States. In such a case a party comes into court to demand something conferred on him by a law of congress.

The proof in this case shows that, before the killing of the horses of Briscoe, the Southern Kansas Railroad Company had leased, for a period of 99 years, its road to the Atchison, Topeka & Santa Fe Railroad Company, a corporation created under the laws of Kansas; that the management of the said Southern Kansas Railroad, and the running of the same, was by the employes of the Atchison, Topeka & Santa Fe Railroad Company; that the defendant had nothing to do with the running of trains or the management of the road in the Indian country; that for this reason the defendant is not liable to plaintiff. If the Southern Kansas Railroad Company had the proper legal authority to execute the lease made by it to the Atchison, Topeka & Santa Fe Railroad Company, and in pursuance of such authority it had made the lease, and turned over the control and management of the road to the lessee, I believe the true doctrine is that it would not be liable for damages caused by the torts of the lessee. An authorized lease, without any exemption clause, absolves the lessor from the torts of the lessee resulting from the negligent operation and handling of its trains, and the general management of the leased road, over which the lessor could have no control. *Nugent* v. *Railroad Co.*, 6 Amer. St. Rep. 151, 12 Atl. Rep. 797. A railroad company whose road is operated by a lessee in the name of the lessor is liable to third persons for the lessee's negligence, unless absolved therefrom by legislative authority. A railroad company has no power to lease its road so as to relieve itself from liability for the non-performance of duties devolving upon it, in the absence of legislative authority, expressly given. *Railroad Co.* v. *Dunbar*, 71 Amer. Dec. 291. The franchises of a railroad company are intended to be exercised for the public good. This is why they are granted. A corporation cannot absolve itself from the performance of its obligations to the public without the consent of the legislature, expressly given. *Singleton* v. *Railroad Co.*, 48 Amer. Rep. 574; *Railroad Co.* v. *Barron*, 5 Wall. 90. That the lessor is absolved from liability by legislative authority, in effect, when the lease is authorized by law, I believe to be the true doctrine.

It is claimed by defendant that it had authority to make the lease; that this authority is derived from the act of congress which authorized the building of the road through the Indian nations; and, if the author-

ity is not to be found there, that it existed by virtue of the authority of the laws of Kansas, under which it held its charter. It is clear to my mind that the authority to lease is not given by the act of congress of July 4, 1884, which gave the defendant the right to build its road through the lands of the Indian nations. This authority, under this act, is claimed by virtue of the tenth section thereof. This section declares that—

"The said Southern Kansas Railway Company shall accept this right of way upon the express condition, binding upon itself, its successors and assigns, that they will neither aid, advise, nor assist in any effort tending towards the changing or extinguishing of the present tenure of the Indians in their land, and will not attempt to secure from the Indian nations any further grant of land, or its occupancy, than is hereinbefore provided."

This is the only part of the act that mentions the word "assigns." There is no express power to lease the road in the act. The use of the words "assigns" and "successors" in the tenth section of the act does not necessarily imply that the corporation can transfer all of its property and franchises to another corporation by lease. *Railroad Co.* v. *Railroad Co.,* 130 U. S. 1, 9 Sup. Ct. Rep. 409; *Thomas* v. *Railroad Co.,* 101 U. S. 71; *Railroad Co.* v. *Railroad Co.,* 118 U. S. 290, 6 Sup. Ct. Rep. 1094. By these authorities the principle is enunciated—

"That, unless specially authorized by its charter, or aided by some other legislative action, a railroad company cannot, by lease or other contract, turn over to another company for a long period of time its road, and all its appurtenances, the use of its franchises, and the exercise of its powers; nor can any other railroad company, without similar authority, make a contract to secure and operate such road, franchises, and property of the first corporation; and that such a contract is not among the ordinary powers of a railroad company, and it is not to be presumed from the usual grant of powers in a railroad charter."

Under this rule there is clearly no right given to the Southern Kansas Railroad Company by the act of congress to lease its road. It simply recognized the existence of this company as a Kansas corporation, and gave it certain rights in the Indian country,—such as the right to build its road through such country, and exercise all the ordinary powers incident to the ownership, construction, and operation of its road.

But it is claimed that its Kansas charter gives it the right to lease its road. If this road was in Kansas, the position would be well taken. The power to lease the road in Kansas would exist.

"A state cannot, by chartering a corporation, confer upon it a legal right to act within the jurisdiction of another state." 2 Mor. Priv. Corp. § 958.

It is a fundamental principle that the laws of a state can have no binding force *proprio vigore* outside of the territorial limits and jurisdiction of the state enacting them. Section 959, Id. The charter of this road, or the laws of Kansas under which it exists, does not give it the right to exercise its powers beyond the state of Kansas. Its powers under its Kansas charter cannot be exercised in the Indian country unless permitted to be exercised by the act of congress; and they can be exercised only

to the extent so permitted. In the case of *Runyan* v. *Coster's Lessee*, 14 Pet. 122, and in *Bank* v. *Earle*, 13 Pet. 519, the supreme court of the United States said:

"Every power which a corporation exercises in another state depends for its validity upon the laws of the sovereignty in which it is exercised."

It was further held, in the above cases, that a corporation can make no valid contract without the sanction, express or implied, of the laws of such sovereignty. It is decided in *Bank* v. *Earle*, 13 Pet. 524, that courts of justice have always expounded and executed contracts according to the law of the place in which they were made, provided that the law was not repugnant to the laws or policy of their own country. The court, in the above case,. held the rule to be "that, by the comity of nations, foreign corporations are allowed to make contracts under their respective limits not contrary to the known policy of such nations, or injurious to their interests." This gives a railroad corporation the right to exercise all its ordinary powers growing out of its franchise, such as making contracts in regard to the transaction of its business, as was the case in *Railroad Co.* v. *Gebhard*, 109 U. S. 527, 3 Sup. Ct. Rep. 363. But when it undertakes by a lease of its road to get rid of its responsibility or liabilities to the public, which it assumed when it accepted the franchise, it would be exercising an extraordinary power, which may be greatly prejudicial to the public, and therefore is contrary to the known policy of a state, and injurious to its interests, and cannot be exercised unless the state, by express authority conferred, authorizes it to be done.

The execution of a contract of lease by the defendant by which it parted with its franchise for three generations is not among its ordinary powers. I take the rule to be, in this country, that the ordinary powers vested by the law of its creation may be exercised anywhere by the rule of comity. The granting of this franchise in the Indian country by congress was the granting of a right in which the public has a large interest. Railroad companies being public corporations so far as to be subjected to control by legislation, they can do no act which would amount to a renunciation of their duty to the public, or directly and necessarily disable them from performing it. They cannot, therefore, convey away their franchises and corporate rights. But they may "contract debts, purchase on credit, and mortgage their personal property not affixed to the road, though used in operating it," as these would be but the exercise of their ordinary powers. 1 Wat. Corp. 589. There is nothing in the act of congress authorizing the defendant to build its road permitting it to lease it. The laws of Kansas granting the extraordinary power to defendant to lease its road cannot operate beyond the sovereignty of Kansas. Before defendant could lease its road in the Indian country it must have the consent of the other party to the contract,— the United States. This consent must be expressly given. It might be given by the act of congress directly, by the use of appropriate words in the act, or by the adoption of the power in the Kansas charter; but it has done neither, and therefore, as far as the public is concerned, it does not exist.. I am not deciding what these two companies may do as affecting

each other, but simply, as far as the public is concerned, this act of leasing is an unauthorized lease. This being so, the defendant company is liable to third parties for damages occasioned by the tortious acts of the lessee of defendant. The motion for new trial, for the reasons above given, must be overruled; and it is so ordered.