BLAGG, *et al. v.* STRICKLAND TRANSPORTATION COMPANY, INC.

5-126                                          258 S. W. 2d 894

Opinion delivered June 15, 1953.

*Wootton, Land & Matthews,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

MINOR W. MILLWEE, Justice. Donald M. Stueart was driving his automobile over Highway No. 7 between Arkadelphia and Hot Springs, Arkansas, on May 7, 1952, when the car collided with a motor truck belonging to Woodrow Ligon and being driven by Morris McCoy. Stueart sustained injuries from which he died shortly after the collision.

Appellants, Mary Stueart and Helen Ruth Blagg, are co-administratrixes of the estate of Donald M. Stueart, deceased. They brought an action in the Circuit Court against Ligon, McCoy, D. W. Hoskins, d/b/a Hoskins Truck Service, and the appellee, Strickland Transportation Company, Inc., hereinafter called "Strickland," seeking damages for the alleged wrongful death of their intestate. At the conclusion of all the testimony introduced at the trial, the court instructed a verdict for Strickland and a mistrial resulted as to the other defendants. The only

issue on this appeal is the correctness of the trial court's action in directing the verdict in favor of Strickland.

The relevant facts are not in dispute. In 1947, Strickland owned certificates, or permits, issued to it by the Interstate Commerce Commission and the Arkansas Public Service Commission, covering various interstate and intrastate routes for the transportation of merchandise by motor carrier. On March 28, 1947, Strickland and Hoskins entered into a written contract in which Strickland agreed to lease to Hoskins for 10 years its operating rights over certain of its intrastate routes, including Highway No. 7 between Arkadelphia and Hot Springs, for $125 per month, with an option that Hoskins might renew the lease for an additional 10 years at the expiration of the primary lease term. The contract was also made subject to the approval of the Arkansas Public Service Commission.

On April 2, 1947, the joint petition of Strickland and Hoskins was filed with the Public Service Commission pursuant to Ark. Stats., § 73-1715, requesting approval of the lease contract. After proper notice, a hearing was held on April 21, 1947, resulting in an order by the Commission approving the lease agreement as being in the public interest. Strickland removed the routes designated in the lease and the order of the Commission from its intrastate tariffs, and closed its terminal warehouse in Hot Springs. Hoskins began operating said routes under his own certificate number previously issued by the Commission and opened a warehouse in Hot Springs. Strickland has not engaged in intrastate operations over the designated routes since issuance of the order of the Commission on April 21, 1947. Woodrow Ligon was hauling freight for Hoskins under some oral agreement between them when Ligon's truck collided with Stueart's automobile on May 7, 1952.

In determining whether the trial court erred in directing a verdict for Strickland, the sole issue is whether the latter, as lessor, is liable for the torts of the lessee Hoskins, or his agent, under a lease of intrastate operating rights which has been approved by the Public

Service Commission pursuant to § 73-1715, *supra*. The Arkansas Motor Carrier Act [Ark. Stats., §§ 73-1701—73-1727] contains no express provision in reference to such liability. While the transfer of a certificate and the lease of operating rights thereunder are duly authorized by § 73-1715, *supra,* such lease, or transfer, is ineffective without the approval of the Public Service Commission. *Gregory* v. *Lewis,* 205 Ark. 68, 167 S. W. 2d 499. It should also be noted that § 73-1716 provides that before a carrier is issued a certificate or permit under the act, it must comply with the rules and regulations of the Commission relative to furnishing surety bonds or insurance policies for the protection of shippers and the public generally.

There is a decided conflict of authority on the question presented. Some courts hold that where the lease is authorized by a statute which contains no express provision as to the subsequent liability of the lessor, the authority to lease implies an exemption from liability on the part of the lessor for the torts of the lessee. Other courts hold that the lessor is not relieved from liability unless there is an express provision to that effect in the statute which authorizes the lease. See Annotation, 28 A. L. R. 122; 13 C. J. S., Carriers, § 707; 44 Am. Jur., Railroads, § 343.

This court noted the two conflicting lines of authority on the issue here presented in *Little Rock & Fort Smith Ry. Co.* v. *Daniels,* 68 Ark. 171, 56 S. W. 874, and chose to adopt the first view expressed above. In that case, the appellant railway leased its road together with its equipment and franchises to another company for a term of years pursuant to statutory authority. Justice Battle, speaking for the court, said: ''We are aware that there is a wide diversity of opinion upon this subject. But we think that the weight of authority and reason sustain the view we have expressed. In granting the authority to lease, the statutes empowered it to transfer the possession and control of the demised property, together with the duty of operating the road, to the lessee, to the exclusion of the lessor; and this transfer

carried with it to the lessee the responsibility for injuries caused by its negligence in the discharge of such duty, and exonerates the lessor from the same. The authorities which hold to the contrary do so upon the ground that the legislature must expressly exempt the lessor from responsibility, in order to exonerate him from liability. They concede that the legislature may by express enactment exonerate the lessor, and, in the absence of such enactment, they limit the effect of the lease when the legislature or the parties have not done so. They grant the right to a railway company to relinquish control of its railroad under the authority vested in it by the statute to lease, but hold that it is still liable for the injuries caused by negligence in the exercise of such control, unless the statute expressly exempts them from such liability on account of the lease. They tacitly assume 'that, in granting authority to lease, the legislature granted something less than an authority to lease. We believe that the only theory that can be defended on principle is that, in granting authority to execute a lease, the legislature conferred authority to execute an effective instrument, with all the qualities and incidents with which the law invests a lease. If this be true, then the lease does transfer possession and control from one party to the other for the term of the lease, and the rights and obligations of the parties are such, and such only, as the law annexes to the relation of lessor and lessee. For negligence in managing and using the demised premises the lessor is not responsible.' *Railway Co.* v. *Curl*, 28 Kan. 622; *Nugent* v. *Railroad Co.*, 80 Me. 62, 12 Atl. 797; *Arrowsmith* v. *Railroad Co.*, 57 Fed. Rep. 165; Elliott on Railroads, § 469, and cases cited."

While the judgment against the lessor in the Daniels Case was reversed, the court nevertheless held the lessor to be a proper party defendant since the plaintiff had a right to a satisfaction of his judgment against the lessee out of the corpus or physical property of the leased railway under our constitution and statutes. In the case at bar, Strickland leased no equipment or other physical property to Hoskins and no proprietary or property

rights in the use of the public highways are conferred by the issuance of a certificate under the Motor Carrier Act. See § 73-1710(d). Manifestly, the legislature intended that shippers and the public generally should be protected through insurance or surety bond required of a certificate holder or operator under § 73-1716, *supra*.

Appellants cite several cases from other jurisdictions which follow the view rejected by this court in the Daniels case. They also rely on the case of *Memphis, Dallas & Gulf Ry. Co. v. Richardson*, 126 Ark. 236, 190 S. W. 434. In that case it was held that if fire was set by the engine of one railway while upon the tracks of another under some kind of joint permissive use not disclosed by the record, both would be responsible for the damages, but, if the fire was set by the engine of the company owning the tracks, it alone would be responsible. There is nothing to indicate that there was any lease or transfer of operating rights involved in the Richardson Case. On the contrary, it is certain that there was no exclusive lease or use granted under legislative approval such as that involved here and in the Daniels Case. This distinction was clearly recognized in *St. Louis, I. M. & S. Ry. Co. v. Chappell*, 83 Ark. 94, 102 S. W. 893, 10 L. R. A., N. S. 1175. The court there pointed out the difference between a case of joint use by two companies and one where the lessor company parts with possession and control of the road under a lease sanctioned by legislative authority.

The principle adopted by this court in the Daniels Case is controlling and Strickland is not liable for the torts of the lessee Hoskins, or those acting for Hoskins, under the facts here presented. It follows that the trial court correctly instructed a verdict for Strickland. The judgment is accordingly affirmed.